## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**McDONOUGH FAMILY LAND, LP,**
**and INGERSOLL RANCH, FLP**

      **PLAINTIFFS**                    NO. 20-368 L

**v.**                                    Chief Judge Elaine D. Kaplan

**THE UNITED STATES OF AMERICA**

      **DEFENDANT**

---

### *PLAINTIFFS' FIRST AMENDED COMPLAINT*

Plaintiffs, the McDonough Family Land, LP and the Ingersoll Ranch, FLP (the "Ranches"), for their complaint state as follows:

### INTRODUCTION

1.      This is a civil action filed under the Tucker Act for inverse condemnation. The factual gravamen of the action springs from the government taking of the Ranches' property by intentionally igniting backfires and burnouts on private range and timberlands during the 2017 Alice Creek Fire in Lewis & Clark County, Montana. The action seeks just compensation for private property taken by USFS for its own management purposes.

### JURISDICTION AND VENUE

2.      The United States Court of Federal Claims has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(a), as a claim against the United States founded upon the Constitution, specifically in this case the Fifth Amendment to the U.S. Constitution.

3.      Venue for this inverse condemnation action under the Tucker Act is proper in the United States Court of Federal Claims in Washington, D.C.

## PARTIES

4.      Plaintiff the McDonough Family Land, LP ("McDonough Ranch") is a Domestic Limited Partnership, formed in 2009 under the laws of the State of Montana, and is registered with the Montana Secretary of State as active and in good standing.  Its principal place of business is in Wolf Creek, Montana.

5.      At all relevant times, the McDonough Ranch owned interests in real and personal property located at 5835 Lewis & Clark Road, Wolf Creek, Montana, which interests USFS took without just compensation during the 2017 Alice Creek Fire.

6.      Plaintiff the Ingersoll Ranch, FLP ("Ingersoll Ranch"), is a Domestic Family Limited Partnership, formed in 2005 under the laws of the State of Montana, and is registered with the Montana Secretary of State as active and in good standing.  Its principal place of business is in Wolf Creek, Montana.

7.      At all relevant times, the Ingersoll Ranch owned interests in real and personal property located at 6052 Montana Highway 200, Wolf Creek, Montana, which interests USFS took without just compensation during the 2017 Alice Creek Fire.

8.      At all relevant times, Defendant United States of America, acting through an agency of the United States Department of Agriculture, the United States Forest Service (USFS), and/or other federal governmental entities duly organized and existing under and by virtue of the laws of the United States of America, or agents of any of the foregoing, has responsibility for, among other things, managing and controlling the federally-owned land commonly known as the Helena-Lewis and Clark National Forest.

## GENERAL ALLEGATIONS

9.      The Helena-Lewis and Clark National Forest consists of approximately 1,863,788 acres of varying terrain—grass, shrub, and timber lands; is divided into seven separate sections that encompass eight separate mountain ranges; and is the oldest forest preserve in the United States.

10.     At all relevant times, USFS was responsible for and in fact controlled:

    a.   natural resource management within the Helena-Lewis and Clark National Forest and other federal lands;

    b.   fire modeling and management within the Helena-Lewis and Clark National Forest;

    c.   fire management and fire suppression activities within the Helena-Lewis and Clark National Forest;

    d.   the use of fire in national forests, including the Helena-Lewis and Clark National Forest, to manage resources such as timber, habitat, recreational values, wilderness and watersheds.

11.     On or about July 22, 2017, at 6:37 p.m., USFS detected the Alice Creek Fire, a lightening-start wildfire in the Alice Creek drainage area approximately 16 miles northeast of Lincoln, Montana.

12.     On September 2, 3, 4, 5, 6, 9 and 10, 2017, USFS used backfiring and burnout operations to manage the Alice Creek Fire; the Helena-Lewis and Clark National Forest; and other federal lands, intentionally igniting and burning large tracts of private range and timber, including that belonging to the Ranches.  In doing so, USFS took Ranch property to use as fuel for its intentionally ignited fires.

13.    USFS used burnout and backfiring operations in the time frames identified above as a resource stewardship tool, following its policy of integrating fire and fuels management across landscape, agency, federal, and international boundaries.  USFS management intended to use and did use the Alice Creek Fire to achieve overall forest management goals.  USFS management intended the purposeful ignition of burnouts and backfires as a means of achieving resource management objectives with the Alice Creek Fire, including, without limitation, reducing excess fuel loads, improving timber stand health, enhancing wildlife habitat and preserving watershed quality.

14.    At all relevant times, USFS implemented backfiring and burnout operations on the Alice Creek Fire to achieve resource management goals in general, and, in particular, to manage the direction and rate of spread of the Alice Creek Fire itself.  To fuel its backfiring operations, USFS management took timber and range vegetation owned by and located on the Ranches by intentionally lighting the inflammable materials to fuel its backfiring and burnout operations.

15.    USFS's intentional ignitions consumed timber and range vegetation belonging to the Ranches, damaging soils, roads, and fences.  The USFS actions appropriated a benefit to it at the expense of the Ranches and pre-empted their right to enjoy their property for an extended period of time.  The taking also substantially diminished the fair market value of real property owned by the Ranches and deprived them of its use.

16.    But for USFS's intentional ignition of the Ranches' property to fuel its burnout and backfiring operations in late August 2017, and early September 2017, the property owned by the Ranches would not have burned, and any fire damage to their lands, if any, would have been

4
—

*de minimis*.  Had USFS not elected to use the Alice Creek Fire to further its resource management goals and had not USFS elected to execute backfiring and burnout operations as part of its use of the Alice Creek Fire for management purposes, the Ranches would have suffered no material or substantial damage as a result of the naturally ignited Alice Creek Fire.

### INVERSE CONDEMNATION

17.    The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." The purpose of this Fifth Amendment provision is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

18.    USFS's management of the Alice Creek Fire forced the Ranches alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

19.    At all relevant times, the Ranches held ownership in cognizable property interests, including without limitation, rights of possession, use and disposal of the property, for purposes of the Fifth Amendment, in the range and timberlands intentionally ignited by USFS management.

20.    USFS's decision to use the Alice Creek Fire for resource management in general, and its decision to intentionally ignite property owned by the Ranches in particular, amounted to a compensable taking of their respective property interests.

21.    USFS's decision to use the Alice Creek Fire for resource management in general, and its decision to intentionally ignite property owned by the Ranches, in particular, effected a taking by a direct government appropriation or, in the alternative, physical invasion of private

Plaintiffs' First Amended Complaint

property.  USFS's intentional ignition of the Ranches' property effectually destroyed or substantially impaired its usefulness.

22.    The duration of the USFS's invasion and taking of property is material or substantial.  Range and timber were destroyed by USFS fires.  The real property remains substantially impaired in its usefulness and value and will continue to be impaired for the foreseeable future as a result of the effects of the taking.  The property taken for USFS management purposes includes, without limitation:

    a.   fencing;

    b.   roadway support;

    c.   forage and water sources for domestic livestock and wildlife;

    d.   mature commercial timber;

    e.   maturing and mature noncommercial timber useful for wildlife cover and recreational and aesthetic purposes;

    f.   native vegetation useful for the control of erosion; and

    g.   native vegetation useful for the inhibition of noxious weeds that impair agricultural production and destroy aesthetic quality of real property.

23.    USFS's decision to use the Alice Creek Fire for resource management in general, and its decision to intentionally ignite property owned by Plaintiff McDonough Ranch and Plaintiff Ingersoll Ranch, in particular, caused injury and impairment to the Ranches' property that consisted of direct, natural, or probable result of the USFS's authorized management activity.

24.    In the ordinary course of events, absent USFS's decision to use the Alice Creek Fire for resource management in general, and its decision to intentionally ignite their property in particular, neither McDonough Ranch nor Ingersoll Ranch would have suffered injuries caused by the USFS management decisions in general, in particular its decision to use the Alice Creek

6

—

Fire to further its resource management objectives and its decision to use burnouts and backfires to execute its management decisions.

25.    But for USFS's election to use the Alice Creek Fire for resource management purposes, in general, and its decision to intentionally ignite the Ranches' property, in particular, the property taken by USFS would not have burned in the Alice Creek Fire.

26.    The actions of USFS resulted in significant foreseeable damage to the property interests of the Ranches.  The burning of range and timber was exactly what USFS management intended in igniting its burnouts and backfires.  At the very least, the burning of the Ranches' range and timber was the foreseeable result of authorized USFS actions.

27.    The Ranches reasonable investment-backed expectations were that they would be, absent USFS actions, able to use their range and timber for productive agricultural and recreational purposes.  The character of the Ranches' land and property is unique in its location and amenities along Montana's Rocky Mountain Front, as well as its history and legacy, in that the owners of the Ranches are the direct progeny of homesteaders who originally patented the Ranches' lands.

28.    USFS management's ignition of the Ranches' property has been substantially reduced in its usefulness for agricultural and recreational purposes and has been diminished in total of fair market value and other damages by $8,813,791 dollars.

29.    USFS intended to invade the Ranches' property interests in that it planned and intended to ignite the Ranches' range and timberlands and expected its management goals to be served by its planned ignitions. If USFS had wanted to suppress the Alice Creek Fire, it had safe and effective alternatives.  Instead, it chose to manage the Alice Creek Fire with land

management goals primarily in mind rather than fire suppression. In doing so it elected to execute ignition of burnouts and backfires on the Ranches' property or the burning of Ranch property.

30.    The invasion and taking of the Ranches' property interests was not merely an incidental or consequential injury inflicted by USFS's conduct. Here, in purposely igniting its burnouts and backfires for management purposes, USFS intended to invade a protected property interest, or, in the alternative, invasion of the Ranches' property interests was the direct, natural, or probable result of USFS burnout and backfiring activities and not the incidental or consequential injury inflicted by, for example, an accidental or inadvertent ignition and burning of the Ranches' property.

31.    USFS's actions were done in furtherance of a public purpose including, without limitation, the management of the Alice Creek Fire and of the Helena-Lewis and Clark National Forest. USFS's invasion of the Ranches' property interests thus appropriated a benefit at the expense of the Ranches, or USFS's invasion of the Ranches' property interest preempted the Ranches right to enjoy their respective properties for a legally substantial period of time which will likely last for many years to come.

32.    By igniting and burning the Ranches' property interests, USFS exercised dominion and control over said property and accomplished a taking of the Ranches' property and the Ranches' property interests. The nature and magnitude of USFS's action is profound and will last for at least a generation. The effects caused by the USFS taking are continuing.

33.    The Ranches have received no compensation, just or otherwise, from Defendant United States for USFS's taking effected as described herein. The United States has no apparent

8
—

intention of implementing condemnation proceedings against the Ranches now or in the foreseeable future.

34.    The Ranches are entitled to receive just compensation for the property taken as a result of USFS's decision to use the Alice Creek Fire for resource management in general, and its decision to intentionally ignite the Ranches' property, in particular, in a total amount of $8,813,791.

35.    The Ranches are entitled to reimbursement of their reasonable expenses, costs and attorney's fees under the provisions of 42 U.S.C. § 4654(c).

## REQUEST FOR RELIEF

Accordingly, Plaintiffs, the McDonough Family Land, LP and the Ingersoll Ranch, FLP, request as follows:

1.    For the McDonough Family Land, LP, a money judgment for just compensation in the sum of not less than Seven Million, Five Hundred Twenty-Two Thousand, One Hundred Seventy-Nine Dollars and No Cents ($7,522,179), plus reasonable expenses to include attorney fees, expert witness fees, and other costs and expenses of obtaining judgment against the United States; and

2.    For the Ingersoll Ranch, FLP, a money judgment for just compensation in the sum of not less than One Million, Two Hundred Ninety-One Thousand, Six Hundred Twelve Dollars and No Cents ($1,291,623.00), plus reasonable expenses to include attorney fees, expert witness fees, and other costs and expenses of obtaining judgment against the United States; and

3.    Such other and further relief as may be appropriate in the circumstances.

DATED this _____ day of June 2022.

PLAINTIFFS' FIRST AMENDED COMPLAINT

Respectfully Submitted,

By: ___/s/Quentin M. Rhoades_____
    Quentin M. Rhoades
    **RHOADES & ERICKSON PLLC**
    430 Ryman Street
    Missoula, Montana 59802
    Telephone: (406) 721-9700
    Telefax: (406) 721-5838
    qmr@montanalawyer.com

*OF COUNSEL*

Robert Erickson, Esq.
**RHOADES & ERICKSON PLLC**
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 721-5838
erickson@montanalawyer.com

*PRO QUERENTE*
McDONOUGH FAMILY LAND, LP,  and INGERSOLL RANCH, FLP